UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| I.E.C., on his own behalf and by through her Parent and Natural Guardian, J.R., | Civil File No. Unassigned |
| Plaintiffs, | **COMPLAINT AND APPEAL** |
| -vs- | |
| Minneapolis Public Schools, SSD No. 1, | |
| Defendant. | **JURY TRIAL REQUESTED** |

## I. INTRODUCTION

The action is brought to redress the rights of Plaintiff Isabella Eileen Cavanaugh (Bella) as a student with a disability the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq.*, and its implementing regulations 34 C.F.R. Part 300, Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 794, and its implementing regulations at 29 C.F.R. Part 104, as amended, Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, 42 U.S.C. § 1983 (Section 1983), and the Minnesota Human Rights Act, § 363A.03 against the Minneapolis Public Schools (District).

The Plaintiff has demonstrated from her fourth grade school year in 2006/07 to the present significant learning challenges associated with her diagnosis of Attention Deficit Hyperactivity Disorder, Anxiety and her disability in Mathematics. Despite repeated efforts by Bella parent, Jennifer Russell (Russell), to inform the Defendant of Bella's disabling conditions, the District refused to identify or evaluate Bella for special education.

In this instance, Jennifer Russell met with Defendant's agents and employees on multiple occasions and provided those agents and employees with medical documentation of Bella'

1

disabling conditions.  The Defendant's agents and employees deliberately refused to identify and evaluate Bella as a student with a disability despite the Minnesota Department of Education's mandate to the Defendants.  After two years of refusals to identify and evaluate her daughter, Jennifer Russell, attempted to find an education program that would meet her daughter's needs.  When Bella's needs were not met within either a private school or other public school setting, Ms Russell came back to the Defendant for identification and evaluation.  Again, she was denied access to those services.  At the same time that Defendant was denying access to the necessary education services for Bella, Bella was faltering emotionally and psychologically.  Bella's descent in psychological functioning is directly attributable to the lack of supports and services she desperately needed.

When out of medical necessity, Bella was placed into an in-patient hospital setting in Saint Cloud Minnesota, Ms Russell brought a Request for an Administrative Hearing and Complaint to challenge the Defendant's failure to comply with state and federal disability laws.  The Defendant moved to have the Request for an Administrative Hearing dismissed on the basis that the Administrative Law Judge did not have jurisdiction to hear the complaint.  The complaint was dismissed.  When Bella returned to Minneapolis Public Schools after her hospitalization, she made another Complaint and Request for Administrative Hearing which is presently pending.

## II. Parties

1. Bella is a fifteen year-old female born on the 22nd of February 1997.  She is a resident of Minneapolis Public Schools.  She resides with her parent, Jennifer E. Russell at 4349 Beard Avenue South, Minneapolis, Minnesota 55410.

2. Ms Jennifer Russell is the natural parent and guardian of Bella.

3. Special School District Number 1, Minneapolis Public Schools is a political subdivision of the State of Minnesota with its principal place of business at 807 North East Broadway, Minneapolis, Minnesota 55413.

### III. FACTS

4. The Student specifically incorporates by reference the facts set forth in the Introduction as if fully set forth in the Complaint.

5. Bella began attending public school in a full day kindergarten class in the Fall of 2002. Her school of attendance was Lake Harriet Community School. By the time Bella entered the third grade (2005/06), Bella was experiencing significant challenges in her academics and was lagging behind her peers. At the conclusion of Bella's fourth grade school year, after requesting and being denied assistance from the District, Bella's Parent placed her into Carondelet Catholic Schools. Bella attended Carondelet after her mother requested assistance from Minneapolis Public Schools for Bella and was denied that assistance. Carondelet has much smaller classroom sizes at 23 as opposed to the 32 at MPS. Bella continued in Carondelet until the start of her seventh grade school year (2009/10). Because Bella was unable to keep up with the rigor of the course load in Carondelet without accommodations and modification to her education, Bella was returned to Lake Harriet for the 2009/10 school year.

6. Bella transferred back to Lake Harriet for the beginning of her seventh grade. At the time of the transfer back to Lake Harriet, Ms Russell met with the educators to discuss her concerns for Bella in the education environment. Ms Russell and school staff specifically discussed the significant organizational and academic challenges for Bella. During the middle of her seventh grade school year at Lake Harriet, it becomes evident to the Parent and teachers that Bella has difficulties with her school work including her ability to organize, manage, complete her school

work, and sustain her attention in the classroom. Of specific concern to both Bella's Parent and teacher was Bella's ability to meaningfully participate in mathematics. For the first and second quarters of her seventh grade, Bella receives "Fs" in math.

7. As a result of the "Fs" in mathematics and the adverse impact her disability has on her academics at Lake Harriet, the Parent began to contact the District requesting assistance with Bella. Ms Russell left a message for the Principal, Mary Ryncheck specifically requesting information about additional assistance for Bella. The message was never returned. Ms Russell then contacted Ms Heather Gysbers and requested a meeting to discuss Bella. Ms Gysbers informs Ms Russell that Bella is attending her "organizational group" but receives no offer of further assistance.

8. In January-February of 2010, Ms Russell on her own initiative begins to research Section 504 plans. Ms Russell also sought out a vision therapist and brought to the District the assessment by the vision therapist. No recommendation for an evaluation was forthcoming and no information about Bella's rights as a student with a disability is provided to Ms Russell. On the 26th of February 2010, at the Parent's request, a meeting is held between Ms Russell and Ms Herrly (Spanish), Ms Krawetz (Social Studies), Ms Matsumoto (English), Ms Riley (Science) and Mr Tousignant (Math). Ms Russell informs the teachers of the diagnosis of dyscalculia from the vision therapist and requests that the teachers support her request for a services for Bella.

9. In March 2010, Lynne McCoy, responded to Ms Russell's request for Section 504 services and informs her that a Section 504 plan cannot be provided until Ms Russell produces "a written report and a medical diagnosis of a condition which affects learning." At no time does Ms McCoy provide Ms Russell with information related to the rights of students with disabilities in the public school setting. Ms McCoy also declines to provide information to Ms Russell in

writing but instead requests that they communicate via the telephone.  When Ms Russell follows up with a telephone call, she is informed by Ms McCoy that it is the parents' responsibility to get the testing and that there was nothing the District could do about that.  Ms McCoy gave Ms Russell the name of Tim Culbert and told Ms Russell that she suspected Bella to have both ADHD and Anxiety.  Ms Russell sent to Ms McCoy a copy of the vision therapists report in an effort to get a Section 504 plan for Bella.  Upon receipt of this report, Ms McCoy emails Ms Russell writing that according to Ms McCoy's interpretation, the evaluation does not contain a medical diagnosis necessary to start the process for a 504 Plan.  Ms Russell contacted PACER for assistance with procuring services for Bella.

10.     During 2010, Ms Russell scheduled her daughter for a private evaluation at Children's Hospital.  The evaluation was originally scheduled for May 2010 but for reasons outside the control of the Parent and due to scheduling conflicts with Children's, the evaluation was rescheduled for December 2010.  Ms Russell paid for this evaluation.

11.     The Children's Hospital report became available on the 11th of January 2011.  Ms Russell immediately provided a copy to the District.  Ms Russell also followed up with an email to Ms McCoy requesting that a meeting be held to discuss the results of the evaluation.  A meeting is set up for the 21st of January 2012 and Ms Amy Moore, attorney for the District, is invited to attend.

12.     On the 21st of January 2012, Ms Russell met with Ms McCoy, Ms Moore and Angie Riley (Science).  The parties agreed that Bella is eligible for a Section 504 plan but when Ms Russell inquires as to Bella's eligibility for an Individualized Education Program (IEP) she is told by Ms Moore that she and Bella must first start with a Section 504 Plan.

13. A Section 504 Plan was developed and Ms McCoy agrees to meet with Bella weekly to check Bella's progress. Instead, Ms McCoy met with Bella two times for the remainder of the school year. The modifications and accommodations on the Section 504 plan were not implemented including a quiet testing location as well as copies of teacher notes. The Section 504 plan noted that Bella's anxiety affected her ability to approaching teaching staff for accommodations and modifications.

14. A great deal of the onus under the Section 504 plan was placed onto Bella who is reserved, shy and has developed very low self-esteem associated with academics and her education. Due to medical recommendations, Bella began medication trials but the side effects were significant.

15. At the third quarter of her eighth grade school year (2010/11) Bella was failing algebra and earning Ds in Spanish and Science. Multiple telephone messages and emails from Ms Russell to teachers are ignored. Ms Russell began to contact Ms Moore who sympathizes with Ms Russell but does not provide her with Bella's rights under the Due Process Procedural Safeguards.

16. Ms Moore informed Ms Russell that the reason Bella is not entitled to receive additional help is because there is a lack of Title One funding. Ms Russell asked Ms Moore if Bella could attend another District school that did have funding but Ms Moore stated that Bella could not.

17. After multiple telephone calls and emails to Ms Moore, Ms Russell finally got Ms Moore to provide Bella with limited private tutoring (one hour per week) for mathematics at College Nannies and Tutors. Ms Moore attempted to have Ms Russell sign a waiver and release but Ms Russell declined. The private services were insufficient to meet Bella's special education needs in the education environment.

18. During the time that Bella attended Lake Harriet, Ms Russell repeatedly informed the District that Bella was the subject of intense bullying that affected her psychologically. Nothing was done to remediate the bullying.

19. Bella began attending her ninth grade at Washburn High School. Bella did not attend her neighborhood school South West High School because she was too afraid of the academic rigour and the on-going bullying from peers. Prior to beginning her ninth grade, Ms Russell contacted and arranged a meeting with John Jubenville at Washburn. Ms Russell specifically requested additional assistance for Bella and asked about the availability of an IEP. Mr Jubenville told Ms Russell that Bella could not have an IEP until after 6-8 weeks to determine whether the Section 504 Plan was effective. Mr Jubenville made this statement despite Ms Russell's assertions that the Section 504 Plan had been ineffective for Bella.

20. In October 2011, Ms Russell received the MCA testing results that reflected that Bella was not proficient in math and science. In addition, the scores on the NWEAs reflected negative growth for Bella.

21. In December 2011, after several months of failure at Washburn, Ms Russell moved Bella to South View Middle School in Edina, Minnesota with the hope that smaller class sizes and a new environment education environment would assist Bella in making some academic gains. Without an IEP or an effective Section 504 plan, Bella was unable to keep up with the rigours of South View.

22. By February 2012, Bella was engaging in school refusal and had become psychologically damaged by the lack of progress within her public school program.

23  On the 5th of May 2012, Bella was privately evaluated at Minnesota Amplatz Children's Hospital and she started a day program shortly thereafter.  Bella's psychological well-being after years of school failure have caused considerable damage to her mental health and self-esteem.

24.  It is not until after the 9th of April 2012, when Ms Russell filed a Complaint with the Minnesota Department of Education that she received a Due Process Procedural Safeguards Notice.  The Minnesota Department of Education issued a final decision on the Parent's Complaint on the 22nd of May 2012.

25.  The MDE concluded that the Defendant violated its child-find obligations.

26.  The MDE also found that the language in the Defendant's TSES and its application by District administration including licensed attorneys Amy Moore, Cindy Atsatt as well as Lynn McCoy violated state law, Minn.R. 3525.0750.  Any reasonable and knowledgeable educational professional would know that the policy restricted access of disabled students to supports and services within the public school setting.

27.  At no time that Bella attended the Defendant was she evaluated and found eligible to receive special education and related services.  At no time relevant herein did the Defendant provide the Parent with the Due Process Procedural Safeguards provided to the Parent.

28.  At the time the MDE decision reached the parties, Bella was a resident of Minneapolis Public Schools and was attending a day program at Fairview Riverside.  According to the documentation from the District, Bella did not receive education from April 18th to the time she was demitted from Fairview Day Program.  No IEP team meetings were held while Bella was in Fairview Riverside and no effort on the part of the District was made to address her future programming.  When the District failed to undertake its responsibilities, the Parent following

medical advice and trying to ensure her daughter was psychologically, medically and physically safe, placed Bella for June 2012 in Saint Cloud Children's Home.

29. Between Bella's placement in Fairview Riverside and her hospitalization at St Cloud Children's Home, the District unilaterally dis-enrolled her. The Parent through counsel on the 11th of July 2012 requested that Bella be re-enrolled. The District declined re-enrollment without the Parent signing the Re-enrollment documents. The District did not acknowledge re-enrollment until the 7th of August 2012.

30. At the same time that Ms Russell in early to mid-July was requesting re-enrollment, she was also requesting an IEP Team meeting to discuss identification and programming and services for Bella. No meeting was set despite the repeated requests until the 22nd of August 2012. As of the meeting on the 22nd of August 2012, Bella had not yet been properly identified, evaluated or provided with an education program or placement.

31. The Parent filed a Complaint and Request for an Administrative Hearing under the Individuals with Disabilities Education Act on the 11th of June 2012. The District moved to have the matter dismissed under the application of the *Thompson* notice requirement. A limited evidentiary hearing was held on the 10th of August 2012. The ALJ in that matter limited the testimony to the "notice" provided by the Parent. The ALJ declined to hear or admit evidence regarding "notice" from the Parent to the District, including District's legal counsel, received in the form of a complaint with the Minnesota Department of Education, the notice given to the District in the form of the MDE decision or the exceptions to notice set forth in the statute at 20 U.S.C. 1412(a)(10)(B)(iv). A copy of the Affidavit of Jennifer Russell is attached and incorporated herein.

31.  On the 17th of August 2012, the ALJ issued an Order dismissing all claims by Bella and Ms Russell.[1] That decision is being appealed.  Previously, the ALJ issued an order dismissing all claims not under the IDEA, asserting a lack of jurisdiction to hear any non-IDEA claims.  The Plaintiffs appeal that decision.

32.  The MDE also found that the language in the District's TSES and its application by District administration including licensed attorneys Amy Moore, Cindy Atsatt as well as Lynn McCoy violated Minn.R. 3525.0750. Any reasonable and knowledgeable educational professional would know that the policy restricted that access particularly when licensed attorneys experienced in education law were involved in the application of that policy and practice.

33.  In an effort to exhaust all administrative remedies, the Plaintiffs filed a Section 504 Complaint and Request for an Impartial Hearing on the 21st of August 2012.  No impartial hearing officer has been assigned and no response to the Section 504 complaint has been provided as of the date of this Complaint.

34.  Bella is a student with a disability and is entitled to the protections federal and state laws.

35.  As such, she is and was entitled to an equal opportunity to participate in and benefit from special education and related services free from discrimination.  In order to achieve equal access and benefit from the available special education and related services, the Defendant was mandated to  provide Bella with an appropriate evaluation, identification, placement and qualified educators who can successfully intervene on her identified disabling condition of Attention Deficit Hyperactivity Disorder, Anxiety and dyscalculia.

---

[1]  The Order dated the 17th of August 2012 does not reflect whether dismissal is with or without prejudice.

## IV.  CLAIMS

### COUNT ONE
### INDIVIDUALS WITH DISABILITIES EDUCATION ACT

36. The Plaintiffs were denied the opportunity to exhaust administrative remedies when all claims were dismissed by the Administrative Law Judge on the basis that he lacked jurisdiction.

37. The District did not undertake its child-find obligation consistent with 34 C.F.R. § 300.111 and has systemically violated this affirmative duty under the Act through its TSES policies and procedures.

38. The District did not have in effect policies and procedures to ensure children with disabilities, and who are in need of special education and related services, are identified, located, and evaluated. 34 C.F.R. § 300.125(a)(1)(i); Minn. R. 3525.0750.

39. The District did not properly or timely identify Bella's eligibility in all areas of her identified needs including her deficits in attending to tasks and education, organizing, managing and completing academic tasks as required by 20 U.S.C. §§ 1401(3); 1412(a)(3) and 34 C.F.R. § 300.311(a).

40. The District did not timely conduct comprehensive evaluations that took into consideration her functioning in the education environment, her present levels of performance, or provide modifications or changes to the special education programming and related services, 20 U.S.C. §§ 1414(a) – (c).

41. The District did not develop an IEP for Bella that met her unique special education needs, in violation of 34 C.F.R. § 300.320 (a)(2)(i)(A) and (B) and Minn. Stat. § 125A.08(a)(1).

42. The District did not provide the Parent and Student with the Due Process Procedural Safeguards along with the requisite written notices pursuant to 34 C.F.R. § 300.504.

43. The District deprived Bella of the least restrictive environment in her public education by denying her the opportunities to develop compensatory skills to address the adverse impact her disabilities has on her education in violation of 20 U.S.C. §1412(a).

44. As a result, Bella has not received services sufficient to confer meaningful benefit and provide her with a free appropriate public education in the least restrictive environment as required by the IDEA, 20 U.S.C. §1412(a)(1).

45. The District denied Bella a free appropriate public education in violation of corollary state law and the implementing special education rules.  Minn. Stat. Ch. 125A and Minn. R. Ch. 3525.

## COUNT TWO
## SECTION 504 CLAIMS

46.     The Defendant is a public school and receives federal funding.

47.     The Plaintiff was denied the opportunity to exhaust administrative remedies associated with her disability discrimination claims under Section 504.  No impartial hearing officer has been appointed and Defendant has not followed its own policy and procedure related to Section 504 Complaints.

48.     Section 504 of the Rehabilitation Act of 1973 requires that no individual with a disability shall be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.  29 U.S.C. § 794.

49.     Further, the federal regulations implementing Section 504 require that no recipient of federal financial assistance may discriminate against an individual with a disability.  34 C.F.R. Part 104.  The regulations also require that a recipient of federal financial assistance that operates a public education program:

   a.   Must provide a free appropriate public education to each eligible child with a disability in the recipient's jurisdiction regardless of the nature or severity of the disability.  34 C.F.R. § 104.33(a).

   b.   May not exclude any eligible disabled student from a public education.  34 C.F.R. § 104.33(d).

   c.   Must provide education and related services designed to meet the individual needs of the disabled child as adequately as the needs of non-disabled children are met.  34 C.F.R. § 104.33(b).

   d.   Must provide education in the least restrictive environment to the maximum extent appropriate to the needs of the disabled child, maintained by appropriate supplemental aids and services, as close to home as possible.  34 C.F.R. § 104.34(a).

   e.   Must provide comparable facilities, services and activities for disabled students.  34 C.F.R. § 104.34(d).

   f.   Must provide appropriate evaluations before any significant change in educational placements.  34 C.F.R. § 104.35(a).

   g.   Must make placement decisions based on information from a variety of sources which is documented and carefully considered, and must ensure that placement decisions are made by a group of knowledgeable persons.  34 C.F.R. § 104.35(c).

      h.      Must afford disabled students an equal opportunity to participate in non-academic and extracurricular services and activities.  34 C.F.R. § 104.37(a).

50.      The District and its representative in bad faith, with gross misjudgment or deliberate indifference deprived Bella of her rights under Section 504 of the Rehabilitation Act as set forth herein.  The deprivation of equal access to the education curricula by the District is disability discrimination that adversely affected her education, her self-esteem and her psychological well-being.

51.      School districts and public school agencies are prohibited from the use of criteria and methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability, or have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the program with respect to individuals with disabilities.  The District's policies, practices and procedures of failing to take identify and evaluate Bella's disabilities and their adverse impact on her education reflects a violation of these regulations as well as a failure in its obligations to provide reasonable accommodations to her.  In addition, the District has interpreted its own policies to systemically restrict access by disabled students to the modifications, accommodations, and special education services under Section 504 and the Individuals with Disabilities Education Act.  Any reasonable and knowledgeable educational professional would know that the policy restricted that access particularly when licensed attorneys were involved in the application of that policy.

52.      As a direct result of the Defendant and its agents and employees to identify, evaluate and serve Bella, she has suffered significant psychological damage that has resulted in the need for in-patient and out-patient hospitalizations including but not limited to lost educational opportunities, increased and exacerbation of anxiety and depression, loss of self-esteem, and loss of daily functioning.

COUNT THREE
MINNESOTA HUMAN RIGHTS ACT/ADA

53.      The MHRA prohibits an educational institution from discriminating, in any manner, in the full utilization of or benefit of its services because of, *inter alia*, disability.  Minn. Stat. § 363.03, subd. 5(1).

54.      The MHRA makes it an unfair discriminatory practice for an educational institution to "fail to ensure physical and program access for disabled persons." Minn. Stat. §363.03, subd. 5(1).  The District in this instance has deprived Bella of equal access to the education program and denied her equal protection and the statutorily mandated due process for a child with a disability.

55.      The District's policies, practices and procedures of failing to take identify and evaluate Bella's disabilities and their adverse impact on her education reflects a violation of these regulations as well as a failure in its obligations to provide reasonable accommodations to her.  In addition, the District has interpreted its own policies to systemically restrict access by disabled students to the modifications, accommodations, and special education services under Section 504

and the Individuals with Disabilities Education Act.  Any reasonable and knowledgeable educational professional would know that the policy restricted that access particularly when licensed attorneys were involved in the application of that policy.

## VI.  REMEDIES

1. Overturn the Order for Dismissal from the Administrative Hearing.
2. Ordering the Defendant to pay any out-of-pocket expenses related to the independent educational evaluation at Children's and incorporate the resulting recommendations for education programming and placement.
3. Ordering the Defendant to immediately identify Bella as a student with a disability.
4. Ordering the Defendant to develop of an appropriate individualized education program with goals, objectives and supports and services necessary to address Bella's areas of identified need.
5. Ordering the Defendant to provide Bella with an education program and placement that is conducive to learning or pay for transportation to an education setting that can and will meet her education needs.
6. Ordering Bella's placement into a private therapeutic boarding school such as Copper Cannon Academy, the Academy at Sisters, or Colorado Timberline Academy.
7. Determining that the District has violated Bella's rights under the IDEA, Section 504, state laws and rules to procedural and substantive safeguards and an appropriate education during the 2006/07 school year to the present.
8. Awarding Bella appropriate compensatory damages in excess of $50,000.00.
9. Awarding attorneys' fees and costs associated with these claims.
10. Such other relief as the Court deems appropriate.

Respectfully submitted,

**KANE EDUCATION LAW, LLC**.

Dated: 17 September 2012        /s/   Margaret O'Sullivan Kane
                                Margaret O'Sullivan Kane /ID # 220243
                                Attorney for Plaintiffs
                                1654 Grand Avenue
                                Suite 200
                                Saint Paul, Minnesota 55105
                                651/222-8611
                                mkane@kaneeducationlaw.com