## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| I.E.C., by and through her Parent and Natural Guardian, J.R.,<br><br>     Plaintiffs,<br><br><br>     v.<br><br>Minneapolis Public Schools, Special School District No. 1, Minnesota Department of Education,<br><br>     Defendants. | Civil File No. 12-cv-2398  (MJD/LIB)<br><br><br><br>**DEFENDANT'S MEMORANDUM IN RESPONSE  TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Defendant Minneapolis Public Schools ("District") submits this Memorandum of Law in response to Plaintiff's October 31, 2013 Memorandum in Support of Motion for Summary Judgment.  Although the actions in 12-cv-2398 and 12-cv-2997 have not been consolidated on the merits,[1] Plaintiff submitted only one Motion and one Memorandum and has dual captioned them to include both 12-cv-2398 and 12-cv-2997.   In this Memorandum, the District will parse out those responsive arguments relevant to 12-cv-2398.

## I.  INTRODUCTION

The Complaint in this case challenges the August 17, 2012 Order of the Administrative Law Judge ("ALJ") granting the District's motion to dismiss.  In that case, after the District brought a motion to dismiss under *Thompson,* the ALJ held a limited hearing to determine

---

[1]Docket No.30 (March 13, 2013 Order at p. 11); Docket No. 46. 12-CV-2997 (June 24, 2013 Report and Recommendation at pp. 5-6.)

whether Plaintiff had notice of her procedural safeguards before she left the District.  Finding the

Plaintiff had received a notice of procedural safeguards, the ALJ dismissed Plaintiff's claims

relying on *Thompson.*  The ALJ held:

> [Plaintiff] did not make a due process hearing request until after she left the District on
> June 11, 2012.  Applying *Thompson* to these set of facts, [Plaintiff's complaint against
> the District is dismissed.

(Docket No. 30, Ex. 4 at 6-7).[2]  In addition to seeking review of ALJ's August 2012 Order, the

Complaint in 12-cv-2398 alleges violations of Section 504, the Minnesota Human Rights Act

and the Americans with Disabilities Act.  (Docket No. 1 Complaint ¶¶ 46-55 hereinafter

"Complaint").  In support of the Section 504, Minnesota Human Rights Act, and Americans with

Disabilities Act claims, the Complaint does not allege facts that are separate or different than the

IDEA allegations.  For these claims, as for the IDEA claims, the facts alleged involve failure to

identify and evaluate Plaintiff and to provide educational services and accommodations

(Complaint ¶¶46-55)

## II.   THE ALJ'S DISMISSAL OF THE IDEA CLAIM WAS PROPER AND SHOULD NOT BE DISTURBED

### A.  The ALJ Properly Followed Eighth Circuit Precedent

In dismissing Plaintiff's claims, the ALJ properly followed Eighth Circuit precedent

under *Thompson.*  For her part, Plaintiff strongly urges this Court to deviate from this precedent.

Instead of following Eighth Circuit precedent, which this Court must do, Plaintiff urges the Court

---

[2] Plaintiff misstates the ALJ's rationale for holding an evidentiary hearing in this case. Plaintiff asserts that the ALJ held the hearing "solely for the purpose of determining whether Bella and her parent provided the proper notice to the District consistent with... *Thompson*....(Plaintiff's Memorandum at page 6) Instead, the ALJ was clear that hearing was for the purpose of determining whether the parent had received the Notice of Procedural Safeguards which advised her not only of her right to a hearing but also of the advised that failure to request that hearing would result in the claims being moot. (Docket No. 40-4 at p. 2)(Order of the ALJ dismissing Plaintiff's claims)

to follow decisions of the district court for the western district of Michigan, the district court for the eastern district of Pennsylvania, and the district court for the District of Columbia, i.e., *Lewis Cass Intermediate Sch. Dist. v. M.K. ex rel. J.K.,* 290 F. Supp. 2d 832 (W.D. Mich. 2003) *Neshaminy Sch. Dist. v. Karla B,* CIV. A. 96-3865, 1997 WL 137197 (E.D. Pa. Mar. 20, 1997), *L.R.L. ex rel. Lomax v. D.C.,* 896 F. Supp. 2d 69, 70 (D.D.C. 2012).  But there is no authority for this Court to overturn an Eighth Circuit decision based on reasoning employed by lower courts in other jurisdictions.

Indeed, the Plaintiff's reliance on these cases is puzzling and unavailing.  *Neshaminy* is a case which was decided before *Thompson*, not after, and therefore does not even weigh in on the *Thompson* analysis.  Both *Lewis Clark* and *L.R.L.* appear to misapprehend the rational underpinnings of the Eighth Circuit's decision in *Thompson*.  The *Lewis Clark* and *L.R.L.* courts both focus on the fact that the Plaintiff was seeking compensatory education, and in their view this was enough to satisfy IDEA's requirements with respect to the right to a hearing.  But as the Eighth Circuit reiterated in *M.M. ex rel. L.R. v. Special Sch. Dist. No. 1,* 512 F.3d 455, 460-61 (8th Cir. 2008), *Thompson* was based on the parties' fundamental rights and responsibilities under the IDEA.  The parent has the right and responsibility to participate in IEP planning and to put the District on notice of problems by requesting a hearing before leaving the school district.  This is the collaborative process which is the IDEA.  "The core of the statute… is the cooperative process that it establishes between parents and schools." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005). In *Schaffer,* Justice O'Connor articulated Congress' efforts to ensure that the collaborative process embodied by the Act, results in timely and efficient resolution of disputes so as to the produce an educational benefit for the student. The Court stated:

3

> Congress has also repeatedly amended the Act in order to reduce its administrative and litigation-related costs. For example, in 1997 Congress mandated that States offer mediation for IDEA disputes. § 615(e) of IDEA, as added by § 101 of the Individuals with Disabilities Education Act Amendments of 1997, Pub.L. 105–17, 111 Stat. 90, 20 U.S.C. § 1415(e). In 2004, Congress added a mandatory "resolution session" prior to any due process hearing. § 615(f)(1)(B) of IDEA, as added by § 101 of the Individuals with Disabilities Education Improvement Act of 2004, Pub.L. 108–446, 118 Stat. 2720, 20 U.S.C.A. § 1415(f)(1)(B) (Supp.2005). It also made new findings that "[p]arents and schools should be given expanded opportunities to resolve their disagreements in positive and constructive ways," and that "[t]eachers, schools, local educational agencies, and States should be **536 relieved of irrelevant and unnecessary paperwork burdens that do not lead to improved educational outcomes." §§ 1400(c)(8)-(9).

*Shaffer* at 59.  Alternative dispute resolution methods such as mediation and the recently added resolution session are designed to improve educational outcome.  They are methods to quickly resolve disputes while the student is being educated by the school district.  In Minnesota, the legislature has seen fit to add several other alternative dispute resolution processes including a facilitated IEP meeting and a conciliation conference that afford an opportunity for the parties to resolve issues about a student's education while that child is being educated by the district. *See* Minn. Stat.§125A.091 subd. 6.  The Eighth Circuit's decision in *Thompson* supports the core principle of the Act – a collaborative IEP process where issues are raised and quickly resolved so that the student can receive an appropriate education.

In *M.M.,* the student had a long history of behavioral violations at school.  *M.M,* 512 F.3d at 459-60.  When the student was again suspended, this time for assaulting another student and a school staff member, the school district convened an IEP team meeting to consider the problem, but the parent left the meeting.  *Id.* at 461.  She did not request revisions to M.M.'s IEP, protest the school district's decision to move the student to another school, or request a due process hearing.  *Id.*  Instead, at the start of the next school year the parent enrolled M.M. at a charter school outside the school district, but then quickly re-enrolled the student in the school district a month later.  *Id.*  When the parent requested a due process hearing, the ALJ awarded

compensatory education for violations stemming from the time before the student left the school district to enroll in the charter school, largely because the IEP was not revised despite the many behavioral suspensions.  The federal district court affirmed the award.  Reversing, the Eighth Circuit again explained its decision in *Thompson,* particularly the basis for the decision which the ALJ and district court had "ignored."

> On the other hand, the ALJ and the district court ignored an additional basis for our decision in *Thompson:*
>
>> The purpose of requesting a due process hearing is to challenge an aspect of a child's education and to put the school district on notice of a perceived problem. Once the school district receives notice, it has the opportunity to address the alleged problem.

*M.M.,* 512 F.3d at 461 (quoting *Thompson*, 144 F.3d at 579).  As the Court explained, when the parent removed the student and enrolled her in a charter school without requesting a hearing, the parent gave "the District no timely notice of a claim that M.M.'s otherwise appropriate IEP should have been revised before her transfer to Olson."  The Court further explained that:

> The IDEA required the District to revise M.M.'s IEP "as appropriate to address [ ] any lack of expected progress toward the annual goals and in the general education curriculum." Input from L.R. was *a critical part of this process*. In these circumstances, the District *may not be held responsible* for a failure-to-revise violation in the 2003–2004 school year.

*M.M.,* 512 F.3d 455, 460-61 (emphasis added) (internal citations omitted).

Plaintiff makes much of her assertion that the Eighth Circuit has created an "equitable principle that public schools are entitled to 'notice' prior to the child's departure from the offending district" and that this equitable principle "turns the IDEA on its head."  But, in fact, the Eighth Circuit's *Thompson* holding is altogether consistent with the IDEA.  It recognizes and enforces what the IDEA is, a statutory framework for a collaborative process between parent and

school district.  Indeed, the IDEA has always emphasized "the importance and indeed the necessity of parental participation in both the development of the IEP and any subsequent assessments of its effectiveness." *Honig v. Doe*, 484 U.S. 305, 311-12, 108 S. Ct. 592, 598, 98 L. Ed. 2d 686 (1988).  IDEA's procedural safeguards guarantee and require parental participation in the collaborative process of IEP development and dispute resolution.  *Id.*

Plaintiff's preferred reading of the IDEA as set forth in *Lewis Cass, Neshimany,* and *L.R.L.,* on the other hand, is a reading which most certainly turns the IDEA on its head.  Under these cases, the IDEA becomes what the Eighth Circuit has long held the IDEA is not, i.e., a punitive statute which creates a cause of action for educational malpractice and damages.

Since the time it issued the *Thompson* decision over fifteen years ago, the Eighth Circuit has consistently followed the decision.  *See, Smith ex rel. Townsend v. Special Sch. Dist. No. 1 (Minneapolis),* 184 F.3d 764, 767 (8th Cir. 1999), *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 632 (8th Cir. 2010), *Barron ex rel. D.B. v. S. Dakota Bd. of Regents*, 655 F.3d 787, 790 fn 2 (8th Cir. 2011).  In *M.P. ex rel. K. v. Indep. Sch. Dist. No. 721*, 326 F.3d 975 (8th Cir. 2003), the Plaintiff, a student with schizophrenia, alleged that he had been verbally and physically harassed by his peers on the basis of the disability and that although he alerted the school to it, the harassment continued.  *Id*. at 980.  Dissatisfied with the school's response to the harassment, the parent enrolled M.P. in a neighboring school district.  *Id.* at 978.  The parents did not request a due process hearing until after M.P. had left the school district.  *Id.* at 978.  On appeal from the underlying decisions, the Eighth Circuit followed *Thompson* and held that it could not provide relief where M.P.'s parents had failed to request and receive a due process hearing prior to removing him from the school district. *Id.* at 981.  M.P. argued that *Thompson* unfairly required him "to forego his entitlement to due process and remedial relief" and relieved

6

the school district of any liability for violations.  Although the court was sympathetic to M.P.'s

concerns, the Eighth Circuit rejected his argument.  Noting that the ALJ and district court were

"bound by the *Thompson* holding," the Eighth Circuit held that dismissal of M.P.'s claims was

proper.  *Id.* The ALJ in our case appropriately applied the Eighth Circuit's long-held

interpretation of the IDEA's required collaborative process and dismissed the claims.

## III.    THERE IS NO BASIS TO EXCUSE EXHAUSTION

Plaintiff's Section 504 and disability discrimination claims under the Minnesota Human

Rights Act and the American's with Disability Act rely on the same facts alleged in the IDEA

claims.  The Eighth Circuit's analysis of the requirement of exhaustion permits excusal of the

requirement only when the claims are "wholly independent" of claims under the IDEA.  *M.P. ex

rel K & D.P. v. Independent Sch. Dist. No. 721,* 439 F.3d 865, 867 (8th Cir. 2006).  Here,

Plaintiff's claims are that the School District did not evaluate her under IDEA and consequently

that it failed to provide FAPE.  Unlike the *M.P.* case where there where independent claims pled,

here the claims arise solely from the IDEA.  Like in the companion case, 12-2997, Plaintiff

posits two arguments in support of excusing exhaustion.  First, Plaintiff makes a *Thompson*-

based argument that exhaustion must be excused because of futility.  Next, Plaintiff argues that

she has "pled" a "systemic" violation, which in her estimation is enough to excuse exhaustion.

Neither argument satisfies Eighth Circuit exhaustion analysis.

### A. *Thompson* Did Not Make Review Futile

Plaintiff's *Thompson*/futility argument can be answered in several ways.  The first way to

answer the argument is to consider the source of the futility.    Plaintiff asserts that she was

dissatisfied with her daughter's education and accommodations for at least two years while she

was enrolled in the District.  It was incumbent on Plaintiff to participate in IDEA's collaborative

process, including requesting hearing. It is undisputed that she had notice of her rights and

responsibilities in this regard.   But she left the District without requesting a hearing.  Now she

seeks to shift the responsibility for the outcome of that decision to the MDE and the federal

courts, alleging that "in the instant case, not only has the MDE adopted a policy of general

applicability that is contrary to law but so too have the federal courts for children with

disabilities in Minnesota."  (Plaintiff's Memorandum p. 19).  But in the end, the only thing

blocking review of Plaintiff's claims was her own decision to leave without requesting hearing.

Had she requested review before she left, review would have been available and forthcoming.

A second way Plaintiff's *Thompson*/futility argument can be answered is by looking at

the source of the *Thompson* decision itself.  That decision merely reflects the IDEA itself.  It is

not contrary to the IDEA, but echoes IDEA's collaborative procedural scheme.  If *Thompson* and

its progeny flow organically from the IDEA as the District asserts they do, then Plaintiff is left in

the untenable position of arguing that the IDEA (not Plaintiff herself) has blocked her avenue of

review under the IDEA.  Such an illogical argument cannot stand.

Another way Plaintiff's *Thompson/*futility argument can be answered is to ask what

authority supports the argument.  Plaintiff provides no authority for the proposition that a federal

court decision interpreting a federal statute can be the basis for excusing exhaustion.  Instead,

Plaintiff relies on *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138 (2d Cir. 2002).  But

*Weixel* is of no help to Plaintiff, because in *Weixel* the court determined to excuse exhaustion

because the plaintiff was *pro se,* and because the school district had not advised her of her right

to request a due process hearing under the IDEA.  *Id.* 149.  Here, in contrast, the court does not

have before it a *pro se* plaintiff, and the ALJ has already determined that the Plaintiff had been

given notice of her right to an IDEA hearing before she left the District.   Plaintiff simply

presents no authority for the proposition that a federal court decision interpreting a federal statute

can be the basis for excusing exhaustion of administrative remedies under the IDEA.

**B.  The Mere Mention of "Systemic" Violations is Not Sufficient to Excuse Exhaustion**

Plaintiff's other exhaustion argument posits that exhaustion must be excused because

Plaintiff "pled" a "systemic" violation under IDEA.  As a basis for this claim, Plaintiff points to

Paragraph 50 in the Complaint where, she says, she alleged that the District has "systemically

violated [its child find] duty under the Act through its TSES policies and procedures."[3]

(Plaintiff's Memo at p. 23).  We note that Paragraph 50 in the 12-cv-2398 Complaint does not

read as Plaintiff asserts.[4]   Paragraph 51, on the other hand, mentions the words "policy" and

"systemically" in relation to modifications, accommodations, and services.  This bare allegation

is not sufficient to excuse exhaustion for several reasons.

As we argue in the companion case, the bare recital in ¶ 51 does not satisfy pleading

requirements enunciated by the United States Supreme Court, which require more than

conclusory statements.  *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964-1965 (U.S. 2007),

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).  Where allegations are

merely conclusory, they are not entitled to be assumed true.  *Id.* at 681 citing *Twombly, supra,*

550 U.S., at 554–555.  Here, Plaintiff merely recites that the District unlawfully violated IDEA's

---

[3] The particular complaint about the TSES was that it was worded to say that a parent had to request an evaluation in writing, rather than orally or in writing.  It is mere conjecture to say that an improperly worded TSES could result in wide-spread or systemic failure to identify or evaluate students on the part of the District.  We also note that the MDE Complaint discussing the TSES issue, which Plaintiff states was attached to the Complaint, was not attached to the Complaint.

[4] Paragraph 50 of the Complaint actually reads:
   50.  The District and its representative in bad faith, with gross misjudgment or deliberate indifference deprived [Plaintiff] of her rights under Section 504 of the Rehabilitation Act as set forth herein.  The deprivation of equal access to the educational curricula by the District is disability discrimination that adversely affected her education, her self-esteem and her psychological well-being.

and Section 504 requirements by "systematically restrict[ing] access by disabled students to the modifications, accommodations, and special education services under Section 504 and the Individuals with Disabilities Education Act." (Complaint ¶ 50). But the Complaint does not even allege that students in any particular District elementary or secondary school were denied these things, or what specific accommodations, modifications, or services they were denied, much less allege facts that give plausible grounds to show that students District-wide were "systemically" deprived of accommodations, modifications, or services.

Moreover, even if Plaintiff met the pleading requirements, Plaintiff lacks standing to bring the claim. Standing requires the "the irreducible constitutional minimum" of three elements: (1) the plaintiff must have suffered an "injury in fact" which is concrete and particularized, and actual or imminent, not conjectural or hypothetical, (2) there must be a causal connection between the injury and the conduct complained of, and (3) it must be likely, as opposed to merely speculative, that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation" *Id.* At the summary judgment stage the plaintiff "can no longer rest on [ ] mere allegations," but" must set forth by affidavit or other evidence specific facts" to establish standing. *Id.*

In this case, Plaintiff does not have standing to bring the claim of "systemic" violations and, therefore, cannot obtain excuse from exhaustion through the "systemic" claims. To invoke

the jurisdiction of a federal court, "a plaintiff must present a 'case' or 'controversy' within the meaning of Article III of the Constitution." *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 591 (8th Cir.2009). To meet the "irreducible constitutional minimum of standing," plaintiffs must show that they have suffered an "injury in fact" that is "fairly traceable to the challenged action of the defendant," and "likely to be redressed by a favorable decision." *Id.* (quoting *Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130).

In *Barron ex rel. D.B. v. S. Dakota Bd. of Regents*, 655 F.3d 787 (8th Cir. 2011), the plaintiffs, parents of deaf and hearing impaired children, brought suit against the South Dakota Board of Regents claiming that the closure of the South Dakota School for the Deaf violated state and federal law. The plaintiffs sought an order enjoining the closure of the school and the sending of the programs to other school districts. The district court granted summary judgment in favor of the defendants and the Eighth Circuit affirmed. *Id.* at 789. With respect to the plaintiff's challenge to the decision to move the auditory-oral program to a different school district, the Court held that the plaintiffs did not have standing to bring the claim. *Id.* at 794. Where a parent alleges an IDEA violation, but does not have a child enrolled in the school district, the plaintiff will not be able to meet the "irreducible constitutional minimum" because the plaintiff will not be able to show an "injury in fact." *Barron ex rel. D.B. v. S. Dakota Bd. of Regents*, 655 F.3d 787, 794-95 (8th Cir. 2011). Here, as in *Barron*, Plaintiff does not have standing to bring the "systemic" claim because Plaintiff was not enrolled in the school district when she brought the Complaint in 12-cv-2398 or when she brought the due process hearing request.

## CONCLUSION

The ALJ correctly followed *Thompson* and the decision should be upheld. Additionally, Plaintiff presents no authority for excusing exhaustion under the facts of this case. The District

respectfully requests that the Court deny Plaintiff's Motion for Summary Judgment in 12-cv-2398.

<u>*s/Laura Tubbs Booth*</u>

Laura Tubbs Booth
Attorney Registration No. 186910
Roseann T. Schreifels
Attorney Registration No. 0257278
Booth & Lavorato LLC
10520 Wayzata Blvd, Suite 200
Minnetonka, MN 55305
(763) 253-4155
ltbooth@boothlavoratolaw.com
***Attorneys for Defendant***
***Minneapolis Public Schools***

.