## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

I.E.C., on her own behalf and
by and through her Parent and
Guardian, J.R.,

          Plaintiffs,

v.

**MEMORANDUM OF LAW & ORDER**
Civil File No. 12-2398 (MJD/LIB)
Civil File No. 12-2997 (MJD/LIB)

MINNEAPOLIS PUBLIC SCHOOLS,
SPECIAL SCHOOL DISTRICT NO. 1,

          Defendant.

Margaret O'Sullivan Kane, Kane Education Law, LLC, Counsel for Plaintiffs.

Laura Tubbs Booth & Roseann T. Schreifels, Booth & Lavorato, LLC, Counsel for Defendant.

## I.      INTRODUCTION

This matter is before the Court on Plaintiffs I.E.C. and J.R.'s Motion for

Summary Judgment as to both 12-cv-2398 ("IEC I") and 12-cv-2997 ("IEC II")

[IEC I, Docket No. 37]; Defendant Minneapolis Public Schools, Special School

District No. 1's Motion for Judgment on the Administrative Record with respect

to <u>IEC I</u> [<u>IEC I</u>, Docket No. 41]; and Defendant's Motion for Judgment on the

Administrative Record with respect to <u>IEC II</u> [<u>IEC II</u>, Docket No. 51].  The Court

heard oral argument on January 24, 2014.  After oral argument, Plaintiff filed a

Motion to File Additional Authority in Support of Plaintiffs' Motion for

Summary Judgment [<u>IEC I</u>, Docket No. 56], which is also before the Court.

## II.    BACKGROUND

### A.    Factual Background

The facts presented below are based upon the Administrative Record and

evidence submitted by Plaintiffs supporting their summary judgment motion.

### 1.    Summary of Facts Regarding Student's Time in the School District

Plaintiff I.E.C. ("Student") was enrolled in and out of the Minneapolis

Public School District ("School District") several times.  Student was enrolled in

the School District during the following time periods:

- Fall 2009 to December 12, 2011;

- March 7, 2012 to May 25, 2012; and

- August 1, 2012 to August 29, 2012.

This matter involves issues regarding Plaintiff J.R.'s ("Parent") interactions with

the School District regarding Student: (1) when Parent received notice of the

Individuals with Disabilities Education Act's ("IDEA") procedural safeguards

from the School District and (2) when Parent requested two due process

hearings.  Parent received a Notice of Procedural Safeguards from the School

District sometime between March 26, 2012 and April 9, 2012 (during a time when

Student was enrolled in the School District).  Parent requested a due process

hearing for Student on June 11, 2012 (during a time when Student was not

enrolled in the School District).  Finally, Parent requested a second due process

hearing on August 21, 2009, when Student was enrolled in the School District,

but eight days later, Parent removed Student from the School District.

## 2. Student and Parent's Interaction with the School District

In the fall of 2009, Student attended school in the School District and

started her seventh grade year at Lake Harriet Community Upper School.  (IEC I,

Docket No. 35, Administrative Record Certified Inventory ("Admin. Rec."), Item

1, IEC I Order, at 2.)  During the first half of her eighth grade year there, Student

received all passing grades.  (Admin. Rec., Item 29, District's Exhibits,[1] Ex. 8, at

2.)  In January 2011, after the winter break of Student's eighth grade year (2010-

2011), Parent provided the School District with an evaluation report from

---

[1] Hereinafter, exhibits in the administrative record contained within "District's Exhibits" will be cited as "District's Ex. __."

Children's Hospitals Minneapolis which showed that Dr. Anastasia Ristau had evaluated Student over the break and diagnosed her with ADHD (inattentive type) and dyscalculia.  (Id. at 3; IEC I Order, at 3.)  While Student did not meet the criteria for a learning disability, the school's Section 504 team (which included Parent), determined that she was eligible for a Section 504 Individual Accommodation Plan, which was created by the School District and Parent on January 21, 2011.  (IEC I Order, at 3; Admin. Rec., Item 17, Moore Aff., Ex. A; District's Ex. 8.)

In light of Student's difficulties in math class, however, Parent sent a letter to Amy Moore, the School District's Assistant General Counsel and Section 504 Coordinator for Students.  (See District's Ex. 17, at 104).  The letter, sent on March 25, 2011, stated:

> Thank you so much for looping back.  So, ultimately there are no services or resources available for [Student] to support her math LD [learning disability] through the school or district?  That is such a disappointment, though it's been nearly three months of waiting, so the news isn't terribly surprising to me at this point.

(Id. at 100.)  Because Lake Harriet Community Upper School did not have Title I support for math classes, the District provided Student with private math tutoring.  (Id. at 100-01; IEC I Order, at 3.)

Student entered the School District's Washburn High School in the fall of 2011, and she earned a 3.0 GPA.  (See District's Ex. 9.)  On December 12, 2011, however, Parent withdrew Student from the School District.  (IEC I Order, at 3.) In doing so, Parent did not express dissatisfaction with Student's education nor did she provide notice to the School District.  (District's Ex. 22, at 1-2 (containing an email message to the School District expressing appreciation and inquiring as to whether Student would receive credit for the fall 2011 semester).)

On March 7, 2012, Parent enrolled Student in the Fairview Hospital Adolescent Day Program, which is a treatment program which includes intensive therapeutic services by mental health professionals that seek to stabilize a child's mental health.  (Minn. Stat. § 245.4871, subdiv. 10(4).)  While Student participated in the treatment program from March 7, 2012 to May 2012, the School District was again responsible for Student's education.  (See id. § 125A.51(d).)

On March 26, 2012, Parent filed a formal complaint with the Minnesota Department of Education ("MDE"), alleging that the School District had failed to evaluate Student for special education services while she was in the School District and requesting private school tuition from the School District.  (IEC I

Order, at 4.)  The MDE found that Student should be evaluated for special

education services, but the MDE did not award the requested private school

tuition.  (District's Ex. 26, at 4-6.)

On April 9, 2012, Parent sent a letter to Bernadeia Johnson, Superintendent

of the School District, requesting private school payments from the School

District.  (District's Ex. 7.)  In this letter, Parent acknowledged that she had

received the MDE's Part B Notice of Procedural Safeguards ("Notice of

Procedural Safeguards"), which provides parents with the details of their due

process rights under IDEA.  (Id. ("I filled [sic] a complaint with the Minnesota

Department of Education on the 26th of March and received for the first time a

Part B Notice of Procedural Safeguards.").)  The Notice of Procedural Safeguards

specifically provides:

> Both you and the district have a right to request an impartial due
> process hearing in writing within two years of the date you or the
> agency knew or should have known about the alleged action that
> forms the basis of the due process complaint.   Minn. Stat. §
> 125A.091, Subd. 14(a) and 34 C.F.R. §§ 300.507 and 300.511(e).
>
> . . .
>
> **Loss of Right to a Due Process Hearing**
>
> **NOTE:** If your child changes school districts and you do not request
> a due process hearing before your child enrolls in a new district, you
> may lose the right to have a due process hearing about any special

education issues that arose in the previous district.  <u>See</u> <u>Thompson v. Bd. of the Special Sch. Dist. No. 1</u>, 144 F.3d 574 (8th Cir. 1998).  You do still have a right to request a due process hearing about special educational issues that may arise in the new district where your child is attending.

(<u>IEC II</u>, Docket No. 30, Kane Decl., Ex. 2, at 10-11; <u>see</u> <u>also</u> District's Ex. 48, at 230-31.)  The <u>Thompson</u> case held that, "[i]f a student changes school districts and does not request a due process hearing, his or her right to challenge prior educational services is not preserved."  <u>Thompson v. Bd. of the Special Sch. Dist. No. 1</u>, 144 F.3d 574, 579 (8th Cir. 1998).

On April 25, 2012, the School District denied Parent's request for private school tuition and attached a copy of the Notice of Procedural Safeguards to its response.  (<u>IEC I</u> Order, at 4; District's Ex. 46.)

On May 25, 2012, Student left the Fairview treatment program, and on May 31, 2012, Parent placed her in the St. Cloud Children's Home, which is a residential treatment program in St. Cloud.  (<u>IEC I</u> Order, at 4; Minn. Stat. § 245.4882, subdiv. 1 (amended by 2014 Minn. Sess. Law Serv. Ch. 262 (West)); <u>see</u> <u>also</u> District's Ex. 53.)  From May 31, 2012 to June 29, 2012, St. Cloud Public School District was responsible for providing services for Student.  (Minn. Stat. § 125A.51(d)).  On June 29, 2012, Student was discharged from St. Cloud Children's Home.  (<u>IEC I</u> Order, at 4.)

7

3.    **IEC I**

IEC I involves Parent's June 11, 2012 request for a due process hearing

under the IDEA.  (See 20 U.S.C. § 1415(b)(6)(A), (f).)  This was the first of two due

process hearing requests.

The June 11, 2012 request was made by Parent while Student was in the St.

Cloud Public School District; Parent filed the request with the MDE for a due

process hearing under the IDEA based on the allegation that the School District

failed to evaluate Student or provide her with a free appropriate public

education ("FAPE").  (See generally Admin. Rec., Item 8, IEC I Hrg. Request.)

On August 10, 2012, ALJ Manuel J. Cervantes held a limited evidentiary

hearing on the issue of whether Parent had received notice of her procedural

safeguards before Student left the School District.  (IEC I Order, at 1.)  Based on

Parent's admissions—both at the hearing and in an April 9, 2012 letter sent to the

MDE—the ALJ found that Parent had in fact received notice before Student left

the School District.  (Id. at 6.)   The ALJ applied the Thompson case, found that

the issues raised by Plaintiffs were moot, and ordered summary disposition in

favor of Defendant School District:

> Student did not make a due process hearing request until after she
> left the District on June 11, 2012.  Applying Thompson to these set of
> facts, Student's complaint against the District is dismissed.

(Id. at 6-7).

On September 17, 2012, Plaintiffs appealed the ALJ's decision in IEC I to this Court.  (IEC I, Docket No. 1, Complaint.)

## 4.    IEC II

IEC II involves Parent's August 21, 2012 request for a due process hearing under the IDEA.  This was the second of Parent's two due process hearing requests.

Student returned to the School District between July and August 1, 2012, and Parent then removed student from the School District again by August 29, 2012.  (IEC II, Docket No. 41, Ex. 6, IEC II Order, at 3-4, 5-7.)  During the period when the student was enrolled in the School District during August 2012, the School District and Parent agreed to conduct an Individual Education Program ("IEP") meeting on August 22, 2012 (about a week before the start of the school year).  (Id. at 3-4.)  On August 21, 2012 (one day before the meeting), Parent filed a second request for a due process hearing with the MDE.  (Id. at 1, 3.)  This request claimed that the School District had not timely evaluated the student or provided her with IEP.  (See id. at 5-6.)

The IEP meeting took place the following day.  (Id. at 3.)  At the meeting, the School District offered to conduct a comprehensive evaluation on Student,

9

create an interim IEP, and update the Section 504 plan. (<u>Id.</u>) After the meeting,

Parent communicated to the School District that she did not consent to the

proposal because she wanted Student to be identified for special education based

on prior independent evaluations (not an evaluation by the School District) and

she wanted the School District to use those evaluations to develop an IEP. (<u>Id.</u> at

4.) The School District then agreed to use Parent's prior independent evaluations

to qualify Student. (<u>Id.</u> at 3.) However, Parent disagreed with the School

District's plan and removed Student from the School District on August 29, 2012.

(<u>Id.</u> at 3-4.)

Meanwhile, the MDE considered Parent's due process hearing request. On

October 19, 2012, the ALJ granted Defendant's motion to dismiss Plaintiffs' claim

and dismissed the second hearing because the ALJ found that Parent had

withdrawn Student from the School District before the School District could

deliver any of the requested services to Student. (<u>Id.</u> at 1-2, 7.) The ALJ found

that the School District, therefore, could not evaluate Student without Parent's

consent. (<u>Id.</u> at 4, 6.) Furthermore, the ALJ held that there was no showing of

harm to Student in the seven days between the IEP team meeting and her

departure from the School District. (<u>Id.</u> at 7.)

On November 28, 2012, Plaintiffs appealed this second ALJ decision to this Court.  (IEC II, Docket No. 1, Complaint.)

## B.    Procedural History

Plaintiffs filed a Complaint and Appeal in this Court regarding IEC I on September 17, 2012 [IEC I, Docket No. 1], and a Complaint and Appeal concerning IEC II on November 28, 2012 [IEC II, Docket No. 1].

The IEC I Complaint alleges Count One: Violation of the IDEA; Count Two: Violation of Section 504 of the Rehabilitation Act of 1973; Count Three: Violation of the Minnesota Human Rights Act and the Americans with Disabilities Act.  The IEC II Complaint alleges Count One: Violation of the IDEA and State Special Education Law, Minn. Stat. § 125A.091; Count Two: Violation of Section 504 of the Rehabilitation Act of 1973; and Count Three: Violation of Equal Protection and Due Process under the Fourteenth Amendment and Section 1983.

### 1.    Consolidation Request

The Court consolidated the present cases of 12-cv-2398 and 12-cv-2997 for purposes of pretrial motions, but denied Plaintiffs' request to consolidate the cases at trial; the cases have not been merged or consolidated on the merits.  (12-cv-2398 Docket No. 30, Order, at 11; 12-cv-2997 Docket No. 46, Report and

Recommendation, at 5-6.)  Plaintiffs filed one Motion for Summary Judgment to

address both of the two actions.  [IEC I, Docket No. 39]  Defendant then filed two

separate Motions for Judgment on the Administrative Record for each action.

[IEC I, Docket No. 41; IEC II, Docket No. 51]

## III.    DISCUSSION

### A.    Summary Judgment Standard

Plaintiffs have filed a motion for summary judgment in both IEC I and IEC

II.  Summary judgment is appropriate if, viewing all facts in the light most

favorable to the non-moving party, there is no genuine dispute as to any material

fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking

summary judgment bears the burden of showing that there is no disputed issue

of material fact.  Celotex, 477 U.S. at 323.  "A dispute is genuine if the evidence is

such that it could cause a reasonable jury to return a verdict for either party; a

fact is material if its resolution affects the outcome of the case."  Amini v. City of

Minneapolis, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248, 252 (1986)).

### B.    Standard for Judgment on the Administrative Record

Defendant has filed motions for judgment on the administrative record in these cases.  "In a motion for judgment on the record brought pursuant to the IDEA, a district court must review the state administrative record, hear additional evidence if requested, and grant such relief as it deems appropriate based on the preponderance of the evidence." <u>Pachl ex rel. Pachl v. Sch. Bd. of Indep. Sch. Dist. No. 11</u>, No. Civ. 02-4065, 2005 WL 428587, at *7 (D. Minn. Feb. 23, 2005) (citing 20 U.S.C. § 1415(i)(2)(B)).  In doing so, the court must give "due weight" to agency decision-making while independently deciding whether the student received FAPE.  <u>Id.</u>

### C.    IDEA Standard

The IDEA establishes procedural processes to address identification, evaluation, planning, and dispute resolution, and it requires school districts to follow these procedures to formulate an IEP to meet a disabled child's needs.  <u>See</u> 20 U.S.C. § 1414(a), (d); <u>Sch. Bd. of Indep. Sch. Dist. No. 11 v. Renollett</u>, 440 F.3d 1007, 1011 (8th Cir. 2006).  The IDEA was enacted so that students with disabilities could receive FAPE.  <u>See</u> <u>Thompson</u>, 144 F.3d at 578.  The Minnesota statute implementing the IDEA allows a parent to request and receive a due process hearing if he or she objects to assessment, transfer, or placement of a

13

student and if he or she objects to the addition, provision, denial, or removal of educational services to the student.  Id.  The hearing should be conducted by the school district responsible for the student's education.  See id.  "A school district satisfies its obligations under the IDEA if: (1) it complies with the Act's procedural requirements and (2) the IEP is 'reasonably calculated to enable the child to receive educational benefits.'"  Pachl, 2005 WL 428587, at *7.

D.    **Whether Defendant's Affidavit May Be Considered by the Court**

In its motions before the Court, Defendant cites an April 11, 2013 affidavit provided by Defendant's attorney Laura Tubbs Booth.  [IEC II, Docket No. 36] This affidavit was filed in opposition to Plaintiffs' earlier Motion for Judgment as a Matter of Law and Declaratory Judgment.  [IEC II, Docket No. 27]  This affidavit is cited to provide evidence supporting facts regarding Student's grades while in school and Parent's correspondence with the School District.  The exhibits cited using this affidavit are supported by the ALJ's findings and are duplicates of Defendant's exhibits in the administrative record.

Plaintiffs argue that this affidavit and exhibits cited by Defendant are not agreed upon, and therefore cannot be considered by the Court.  Plaintiffs also argue that consideration of the Booth Affidavit is improper because the affidavit does not limit itself to the issue examined in IEC I: whether Parent received

timely notice of procedural safeguards.  This argument is based upon the fact

that the ALJ in both cases conducted limited hearings and did not consider all

evidence in the record.

Federal Rule of Civil Procedure 56 requires that affidavits must (1) be

made on personal knowledge, (2) set out facts that would be admissible in

evidence, and (3) show that the affiant or declarant is competent to testify on the

matters stated.  Fed. R. Civ. P. 56(c)(4).  The Court concludes that the Booth

affidavit meets all of these requirements.  First, Booth has personal knowledge

about the administrative proceedings below because she litigated both IEC I and

IEC II when the hearings took place.  Second, the affidavit refers to true and

correct copies of documents from the administrative proceedings that would be

admissible, as they are relevant to Defendant's defense and they are judicial and

(regularly kept) school records.  Fed. R. Evid. 803(6), 803(8).  Finally, Attorney

Booth's competence is not disputed.

There is no legal support (in the Federal Rules of Civil Procedure or

elsewhere) for Plaintiffs' argument that the affidavit must be limited to the issues

of IEC I.   First, the two IEC cases before the Court raise more than just the notice

issue central to IEC I; these cases raise Section 504 violations as well.  Limiting

the Booth affidavit in such as way would mean that Defendant would be unable to defend itself against the IDEA and Section 504 complaints.

Furthermore, regarding Plaintiffs' argument that the Booth Affidavit should be excluded because it draws from sources in the administrative record that were not considered by the ALJ and are not agreed upon by the parties, this argument lacks merit.  With respect to that idea that affidavits must present only sources agreed to by the parties, "[j]udicial review of agency action may be conducted on the administrative record even if there are disputed issues of material fact." Indep. Sch. Dist. No. 283 v. S.D., 88 F.3d 556, 561 (8th Cir. 1996). In other words, the Court is free to consider the record as a whole despite the parties' disagreements about certain evidence within it.  Additionally, in considering judgment on the administrative record, the Court is required to review the administrative record, not only what was analyzed by the ALJ.  In fact, the Court may hear additional evidence if requested.  Pachl, 2005 WL 428587, at *7.

While there is no legal impediment to considering the Booth Affidavit, the Court will disregard that affidavit and exclude it from the record nonetheless. The facts relevant to the motions currently before the Court are adequately

supported by Defendant's exhibits already in the administrative record.

Defendant acknowledges this in stating that "[t]he majority of the documents

attached to [the Booth Affidavit] are part of the certified inventory." (Def.'s

Mem. Reply to Pls.' Mem. Opp'n Def.'s Mot. Summ. J., IEC I, Docket No. 49, at

4.) Accordingly, the Court excludes the Booth Affidavit and considers only what

is in the administrative record, supplemented by material submitted by Plaintiffs

for their summary judgment motion.

### E.    Supplemental Material in the Record

On February 14, 2014, Plaintiffs filed a Motion to File Additional Authority

in Support of Plaintiffs' Motion for Summary Judgment. [Docket No. 56] This

motion requested that the Court consider an attached February 12, 2014 report

issued by the United States Senate Health, Education, Labor, and Pension

Committee, particularly its statements regarding decisions from the Eighth

Circuit concerning equitable notice as a bar to IDEA relief. In its response to

Plaintiffs' motion, Defendant noted certain errors in the report and has provided

further details about the cases discussed within it. The Court has considered the

arguments of the parties and concludes that the report is relevant and Plaintiffs

may include it to supplement their briefing. Therefore, the Court grants

Plaintiffs' motion and considers this supplemental material in deciding the

parties' motions.

> **F.** **Whether There Are Faults in the Administrative Record to Prevent the Court from Considering Portions of It**

Plaintiffs argue that the ALJ made an improper finding when he decided

that Parent had agreed to Student's eligibility under Section 504 because the ALJ

ignored Plaintiffs' evidence that Parent had requested special education and

other services.  Plaintiffs argue that Parent asked about an IEP during a January

21, 2011 meeting with the School District.

The Court finds Plaintiffs' argument to be unpersuasive, as the ALJ's

finding that Parent agreed to the 504 Plan was based upon ample evidence,

including testimony from the School District's Section 504 Coordinator and from

Parent herself.  (Admin. Rec., Item 28, August 10, 2012 Hrg. T., at 74).  The

testimony is as follows:

> Q.   And that meeting was to have you share a report from Children's Hospital; correct?
>
> A.  Correct.
>
> Q.  And a 504 plan was developed on that date; correct?
>
> A.  Correct.
>
> Q.  You agreed about the 504 plan at the time?

A.  We all talked about the 504 plan together.  <u>I mean, did I agree?  I mean, I don't know that I necessarily agreed, but it was a plan that the group of us came up with to start with, yes.</u>

Q.  On that date, January 21, 2011, you didn't say to the group I object to this, I don't like this, I'm not happy with it?

A.  <u>I did ask if we could possibly have an IEP for her instead of a 504</u>.  I was curious about that in the limited research that I did before.  So I guess I would say that, yes, I did question the 504 and was assured that that's where they start with students.

(<u>Id.</u> (emphasis added).)

Nothing in this excerpt or elsewhere in the record shows that Parent challenged the 504 Plan or requested special education.  The Court concludes that the evidence supports the ALJ's finding regarding Parent's agreement to the 504 Plan, and therefore, it is not a fault that prevents consideration of the Administrative Record by the Court.

**G.   IEC I – IDEA Claim**

Regarding their IDEA claims in <u>IEC I</u>, Plaintiffs argue that the ALJ's decision in <u>IEC I</u> was improper, and Plaintiffs urge the Court remand the matter back for an administrative hearing on the merits.  The ALJ's decision in <u>IEC I</u> relied upon the Eighth Circuit's decision in <u>Thompson v. Board of the Special School District No. 1 (Minneapolis)</u>, 144 F.3d 574 (8th Cir. 1998).  In <u>Thompson</u>, the parent of a student with various learning disabilities and behavioral issues

requested a due process hearing to challenge the school district's assessment of her son. Id. at 576-77. However, the student was not enrolled in the school district when the hearing was requested. Id. at 577. The Eighth Circuit held that "[i]f a student changes school districts and does not request a due process hearing, his or her right to challenge prior educational services is not preserved." Id. at 579. Thompson also provided that "[s]ubsequent challenges to the student's previous education become moot because the new school district is responsible for providing a due process hearing." Id.

Plaintiffs' main argument is that the Eighth Circuit's holding is simply wrong because it does not comport with the purpose of the IDEA. Plaintiffs claim that the MDE "declined to undertake its duties by expressly conceding to case law that violates the [IDEA]," and Plaintiffs "request the Court overturn the Thompson decision[] and its progeny." (Pls.' Mot. Summ. J., at 2; Pls.' Reply to Def.'s Resp. to Pls.' Mot. Summ. J., at 2.) Plaintiffs do not argue that the present case is distinct from Thompson; rather, Plaintiffs assert that Thompson is simply wrong.

The Court need not assess Plaintiffs' Thompson arguments any further. The Court is bound by Thompson; its holding is straightforward and it squarely

applies to the present case.  Furthermore, the Eighth Circuit has consistently

followed Thompson since it was decided in 1998, with one of the latest cases

being Barron ex rel. D.B. v. S. Dakota Bd. of Regents, 655 F.3d 787 (8th Cir. 2011).

Thus, it is well-established in that, when parties have notice of their procedural

safeguards, "any claims brought on behalf of students who had left the school

and attended another school district without first requesting a due process

hearing for alleged violations of the IDEA have become moot." Id. at 790 n.2.

This is precisely the series of events reflected by the administrative record before

the Court, and the ALJ's findings with respect to the timing of Plaintiffs' request

and notice are amply supported by the evidence.  Accordingly, the Court

concludes that the ALJ's rationale in applying Thompson was proper, and

Plaintiffs' IDEA claim in IEC I shall be dismissed.

### H.    IEC II – IDEA Claim

Plaintiffs also asserted an IDEA claim in IEC II.  At the administrative

level, the ALJ applied the Eighth Circuit case of Schoenfeld v. Parkway Sch. Dist.,

138 F.3d 379 (8th Cir. 1998).  In that case, the Eighth Circuit held that, if a school

district is "denied an opportunity to formulate a plan to meet [a student's] needs,

it cannot be shown that it had an inadequate [IEP] plan under the IDEA." Id. at

382.  Based on this rule, the ALJ in IEC II determined that the matter should be

dismissed because Defendant had agreed to proceed with an evaluation of

Student but Parent removed Student from the School District before the parties

were able to develop an appropriate education plain.  (IEC II Order, at 6.)

Therefore, Defendant had no opportunity to formulate a plan, and there was no

denial of FAPE.  Furthermore, the ALJ held that no compensatory award was

owed because, "even if the [School] District failed in its duties in the seven days

between the IEP meeting and when the Student enrolled in the new district, the

Student has not demonstrated that she sustained any loss of educational benefit

during the relevant seven day period."  (Id. at 7.)

The Court agrees and reaches the same conclusion.  Here, the time period

that Student was back in the School District was so brief that not only was there

not enough time to form a plan, but there are no apparent damages suffered by

Student to redress.  Therefore, the Court concludes that the ALJ's conclusions

were valid, and Plaintiffs' IDEA claim in IEC II must be dismissed.

### I.    Section 504 and Disability Claims – Exhaustion of Administrative Remedies

In both IEC I and IEC II, Plaintiffs set forth claims under Section 504 of the

Rehabilitation Act of 1973 ("Section 504") and the Minnesota Human Rights Act.

These claims are that Defendant did not provide FAPE because it did not

evaluate Student under the IDEA.  The Court concludes that these claims shall be dismissed because Plaintiffs have not exhausted their administrative remedies.

Under the IDEA, there is an obligation for litigants to exhaust their administrative remedies with respect to issues brought for judicial review.  See Indep. Sch. Dist. No. 283, 88 F.3d at 560.  The IDEA's exhaustion requirements prevent "litigants from circumventing the Act's procedural requirements by bringing a related claim under a different Federal statute."  Moubry v. Indep. Sch. Dist. No. 696 (Ely), 951 F. Supp. 867, 888 (D. Minn. 1996).  Therefore, the exhaustion requirement can only be excused if the claims are "wholly unrelated" to the claims under the IDEA.  See M.P. v. Indep. Sch. Dist. No. 721, New Prague, Minn., 439 F.3d 865, 868 (8th Cir. 2006).   For example, the Eighth Circuit has held that a Section 504 claim alleging "failure to protect [a student] from unlawful discrimination on the basis of his disability is a claim that is wholly unrelated to the IEP process, which involves individual identification, evaluation, educational placement, and [FAPE] decisions."  Id.

Here, Plaintiffs' Section 504 and ADA claims are not wholly unrelated to Plaintiffs' IDEA claims because they arise out of facts that concern the IDEA process and do little more than rehash their IDEA claim.  Despite this defect,

Plaintiffs request that the Court nevertheless excuse the exhaustion requirement

for two reasons: (1) futility and (2) Plaintiffs have pled a systemic violation.

**1.   Whether Exhaustion Can Be Excused as to <u>IEC I</u> Because of Futility**

Plaintiffs first argue that the exhaustion requirement should be excused

because using the administrative process would have been futile.  Plaintiffs

argue that efforts to exhaust administrative remedies would be futile because the

MDE would only continue to apply <u>Thompson</u> and dismiss Plaintiffs' claims as

moot.  Notably, the ALJ only applied <u>Thompson</u> in <u>IEC I</u>.  Therefore, Plaintiffs'

futility argument only concerns <u>IEC I</u>.

Plaintiffs rely upon the Second Circuit's decision in <u>Weixel v. Board of

Education of New York</u> in making this futility argument.  <u>Weixel v. Bd. of Educ.

of N.Y.C.</u>, 287 F.3d 138 (2d Cir. 2002), <u>superseded by statute on other grounds</u>.

<u>Weixel</u> provides that the exhaustion requirement "is not inflexible," and "will be

excused where it would be futile [because] 'the agency has adopted a policy or

practice of general applicability that is contrary to law.'" <u>Id.</u> at 149; <u>see also</u>

<u>Heldman v. Sobol</u>, 962 F.2d 148, 158 (2d Cir. 1992) ("The case law . . . has carved

out an exception to [the exhaustion] requirement in situations in which

exhaustion would be futile because administrative procedures do not provide

adequate remedies."). Plaintiffs argue that the MDE and the federal courts have adopted a policy, i.e., the application of <u>Thompson</u>, that is "contrary to law." In making this argument, Plaintiffs reassert that the <u>Thompson</u> approach violates the IDEA because it does not comport with the statute's purpose. Because <u>Thompson</u> was the Defendant's "policy," Plaintiffs assert that their efforts to exhaust administrative remedies would be futile, and therefore exhaustion should be excused.

The Court disagrees. The argument that Plaintiffs' exhaustion of administrative remedies would be futile as a result of application of the Eighth Circuit's ruling in <u>Thompson</u> is circular and unpersuasive. The purpose of the futility exception is to bypass systemic violations that are contrary to law. Plaintiffs cannot show that there are violations and policies contrary to law because the MDE's policies comport with <u>Thompson</u>, which <u>is</u> the law of this jurisdiction. Plaintiffs have provided no legal basis to argue that a judicial decision (<u>Thompson</u>) can be the source of administrative futility.

Furthermore, the <u>Weixel</u> and <u>Heldman</u> cases, on which Plaintiffs rely, are not on point, let alone binding on this Court. In <u>Weixel</u>, the court excused exhaustion for another reason: the plaintiff in that case was <u>pro se</u> and had not

25

been advised of her right to request a due process hearing.  See Weixel, 287 F.3d

at 149.  Similarly, Heldman offers little support because, there, the plaintiff

sought injunctive relief, which was beyond the power of the ALJ to grant, and

therefore would have been a futile request at the administrative level.  See

Heldman, 962 F.2d at 153, 159.  These distinctions render both cases

unpersuasive in the present case.  Accordingly, the Court concludes that and

futility is no viable excuse for Plaintiffs' failure to exhaust administrative

remedies.

> **2.      Whether Exhaustion Can Be Excused in Both IEC I and IEC
> II Because Plaintiffs Pled Systemic Violations**

Plaintiffs also argue that their IEC I and IEC II claims of systemic

violations survive the exhaustion requirement because the IDEA does not impose

an exhaustion requirement for such claims.  Plaintiffs loosely allege systemic

violations in their Complaints in both cases:

> "The District's policies, practices and procedures of failing to take[,]
> identify and evaluate [Student's] disabilities and their adverse
> impact on her education reflects a violation of these regulations
> [Section 504] as well as a failure in its obligations to provide
> reasonable accommodations to her.  In addition, the District has
> interpreted its own policies to systemically restrict access by
> disabled students to the modifications, accommodations, and special
> education services under Section 504 and the IDEA.

(IEC I, Complaint ¶ 51; IEC II Complaint ¶ 67 (emphasis added).)

Plaintiffs against raise the Heldman case from the Second Circuit, which provides that the exhaustion requirement can be excused in cases that allege systemic violations.  See Heldman, 962 F.2d at 158-59 ("The futility exception is particularly relevant in actions, such as the one at hand, that allege systemic violations of the procedural rights accorded by IDEA.").  In that case, the Second Circuit held that completing the administrative process would be useless because the hearing officer lacked the authority to correct the violation alleged.  Id. at 151. Plaintiffs argue that, here, the administrative hearing system has no power to regulate the School District's system-wide violation of the IDEA, and therefore, the Court should employ the Second Circuit's rationale and excuse Plaintiffs' failure to exhaust their administrative remedies.

The Court is not inclined to do so.  In both IEC I and IEC II (which does not involve application of Thompson) more evidence is needed to support Plaintiffs' claims of systemic violations, especially at the summary judgment stage; Plaintiffs have not indicated that any other students were not identified or evaluated under the IDEA.  Furthermore, even had Plaintiffs properly pled their systemic violation claims, they do not have standing to bring such claims.  See Barron ex rel. D.B., 655 F.3d at 794-95 (holding that the plaintiffs were unable to

show injury in fact and thus did not have standing to bring their claim because

they brought an IDEA claim when the student was not enrolled in the relevant

school district).

Plaintiffs have not met their burden in showing that they have standing

over the systemic violation claims because they cannot show injury in fact.

Plaintiffs cannot show injury in fact with respect to IEC I because Student was

not enrolled in the School District when Parent made the due process hearing

request and when Plaintiffs filed the Complaint.  Similarly, in IEC II, Plaintiffs

cannot show injury in fact because the ALJ reasonably held that Plaintiffs had

suffered no injury ("no loss of educational benefit") during the time she was re-

enrolled in the School District during August 2012.  Because Plaintiffs were not

injured and do not have standing to assert their systemic violations claims, there

is no basis for excusing the requirement to exhaust administrative remedies

under the IDEA.  For these reasons, the Court dismisses Plaintiffs' claims under

Section 504 and the ADA, which are raised in both IEC I and IEC II.

## IV.   CONCLUSION

Because the Court concludes, based on the administrative record and the

filings provided by the parties, that all of Plaintiffs' claims fail, the Court denies

Plaintiffs' Motion for Summary Judgment as to <u>IEC I</u> and <u>IEC II</u>.  Because the

Court concludes that the administrative record supports the ALJ's decisions to

dismiss Plaintiffs' claims, and because the Court independently concludes that

Plaintiffs' were not denied FAPE, the Court grants Defendant's Motion for

Judgment on the Administrative Record in both <u>IEC I</u> and <u>IEC II</u>, and reinstates

the decisions of the ALJ.

Accordingly, based on all the files, records, and proceedings herein,

**IT IS HEREBY ORDERED** that:

1.    Plaintiffs I.E.C. and J.R.'s Motion to File Additional Authority in Support

      of Plaintiffs' Motion for Summary Judgment [<u>IEC I</u>, 12-cv-2398, Docket No.

      56] is **GRANTED**;

2.    Plaintiffs I.E.C. and J.R.'s Motion for Summary Judgment as to both 12-cv-

      2398 ("IEC I") and 12-cv-2997 ("IEC II") [<u>IEC I</u>, 12-cv-2398, Docket No. 37]

      is **DENIED**;

3.    Defendant Minneapolis Public Schools, Special School District No. 1's

      Motion for Judgment on the Administrative Record with respect to <u>IEC I</u>

      [<u>IEC I</u>, 12-cv-2398, Docket No. 41] is **GRANTED**; and

4.      Defendant Minneapolis Public Schools, Special School District No. 1's

        Motion for Judgment on the Administrative Record with respect to <u>IEC II</u>

        [<u>IEC II</u>, 12-cv-2997, Docket No. 51] is **GRANTED**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:   July 22, 2014                    <u>s/ Michael J. Davis</u>
                                          Michael J. Davis
                                          Chief Judge
                                          United States District Court